# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

        Plaintiff,

    -vs-                                                                       **Case No. 12-CR-187**

**IRWIN L. MOORE,**

        Defendant.

## DECISION AND ORDER

Irwin L. Moore is charged with one count of being a felon in possession of a firearm. Moore moved to suppress the weapon and other incriminating statements that were obtained during an encounter with police. Magistrate Judge Nancy Joseph held a hearing and issued a recommendation that the motion should be granted because Moore was seized and the officers lacked reasonable suspicion for the seizure. The Court disagrees on both issues. For the reasons that follow, Moore's motion to suppress is denied.

                                                                       \*\*\*

On the evening of July 30, 2012, City of Milwaukee Police Officers Chad Boyack, Nathan Fager, and Richard Ticcioni were patrolling District Five in a marked squad car during the overnight shift. District Five is the busiest district in the city. Prior to their shift that evening, the officers were reminded of two recent shootings in the district, so they focused their patrol on the area where the shootings occurred.

As the officers patrolled District Five that night, Officer Fager was driving the squad car, Officer Boyack was sitting in the front passenger seat, and Officer Ticcioni was sitting in the back seat. At approximately 9:45 p.m., the officers were driving eastbound on Wright Street. They saw three individuals walking east along Wright Street on the north side of the street. The three men were walking to the front and left of the squad car through an area of Wright Street that is well-lit by street lights and surrounding businesses. The officers observed Moore look back behind the right side of his body towards the approaching squad car. After Moore turned around, Officer Boyack saw Moore lift up his arm and position it "on the front center portion of his waistband." According to Officer Fager, Moore "looked as though he secured an object in the front area of his body." This gesture was known to the officers as a "security check," a conscious or subconscious gesture to make sure a weapon is still in place and not falling. Moore's back was to the officers as he performed this maneuver.

After seeing Moore perform the security check, Officer Fager turned the squad car at an angle towards the sidewalk where Moore and his two companions were walking, crossing the oncoming lane of traffic and shining the squad's headlights towards the group of men. The red and blue lights were off, as was the siren. As they exited the squad, none of the officers' weapons were drawn. Officer Boyack testified that as they approached Moore and the other two men, Officer Boyack said, "Milwaukee Police" and asked, "Can I see your hands?" Officer Boyack used a normal, conversational tone of voice and made no commands, such as "stop" or "put your hands up."

Moore and his companions stopped walking, put their hands in the air and kept their hands in the air as the officers approached. At this point, Officer Boyack asked whether any of the three men had a gun. Moore admitted to having a gun in the front of his waistband. Officer Fager circled behind him and asked whether Moore had a permit for the gun. Moore stated that it was a found gun so he did not have a permit. Officer Boyack grabbed Moore's arms. Officer Fager conducted a patdown and secured the weapon. Moore was then handcuffed and taken into custody.

***

The Court conducts a *de novo* review of those portions of the magistrate judge's report and recommendation that were objected-to. *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995). However, the Court is not required to conduct another hearing to review the magistrate's findings or credibility determinations. *Id.* (citing *United States v. Raddatz*, 447 U.S. 667, 675 (1980)). Whether or not proper objections have been filed, the Court may "accept, reject, modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Gusler v. City of Long Beach*, 823 F. Supp. 2d 98, 109 (E.D.N.Y. 2011).

**1. Seizure.** A person is seized "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of

-3-

language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

Once the officers exited the squad car and approached Moore on foot, there is a factual dispute as to whether Officer Boyack said "Milwaukee police, can I see your hands" or "Stop, show me your hands" (as Moore testified). Judge Joseph did not resolve this dispute or explain which testimony she found more or less credible. Instead, she explained that it is "uncontested that the men understood it as a command because all three immediately complied and raised their hands in the air." Recommendation at 12. The fact that Moore (and his cohorts) actually stopped and raised their hands is irrelevant to the issue of whether there was a seizure. "*Mendenhall* establishes that the test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that *to a reasonable person*." *Cal. v. Hodari D*, 499 U.S. 621, 628 (1991) (emphasis added). This standard "allows the police to determine in advance whether the conduct contemplated will implicate the Fourth Amendment" and "ensures that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual being approached." *Chesternut*, 486 U.S. at 574. Moore's subjective perception that Officer Boyack's query was a command does not transform the encounter into a seizure.

Of course, what Officer Boyack actually said is important in determining whether there was a seizure. Officer Boyack testified that he did not order or command but simply asked Moore to show his hands. The Court finds that Officer Boyack's version is credible,

-4-

particularly because his testimony was corroborated by the other officers on the scene.[1] Additionally, while the officers approached Moore from the opposite side of the street in their squad car, they did not activate the car's sirens or lights and did not attempt to impede Moore's means of egress with the car. *See, e.g., Michigan v. Chesternut*, 486 U.S. 567, 575 (1988) (no seizure where the police did not activate a siren or flashers and did not operate the car "in an aggressive manner to block respondent's course or otherwise control the direction or speed of his movement"). All three officers got out of the car, but their demeanor could hardly be described as threatening. None of the officers drew their weapons, made physical contact (at least before Moore announced he had a weapon), or used a raised or urgent tone of voice. Accordingly, the Court finds that a reasonable person in Moore's position would have felt free to leave his encounter with police on the night of July 30, 2012.

**2. Reasonable Suspicion.** Even if Moore was seized, his seizure was supported by reasonable suspicion. A "brief, investigatory stop that demands only a limited intrusion into an individual's privacy is permitted under the Constitution when it is based upon 'specific and articulable facts which, taken together with rational inferences from those facts reasonably warrant that intrusion.'" *United States v. Baskin*, 401 F.3d 788, 791 (7th Cir. 2005) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). Accordingly, a law enforcement officer can execute a "*Terry* stop" when he has "reasonable suspicion that crime may be afoot." *Gentry v. Sevier*, 597 F.3d 838, 845 (7th Cir. 2010). Reasonable suspicion is a "less

---

[1] Generally, a district court must "rehear the disputed testimony before rejecting a magistrate judge's credibility determination," *United States v. Cofield*, 272 F.3d 1303, 1306 (11th Cir. 2001); *see also Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999), but in this case, the magistrate did not make a credibility determination.

-5-

demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence," but the Fourth Amendment "requires at least a minimal level of objective justification for making the stop. The officer must be able to articulate more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity." *Ill. v. Wardlow*, 428 U.S. 119, 123 (2000) (quoting *Terry*, 392 U.S. at 27).

Reasonable suspicion is assessed by considering the totality of the circumstances and commonsense judgments and inferences about human behavior. *Gentry*, 497 F.3d at 845. Such circumstances may include "the behavior and characteristics of the person detained, as well as the experience of the officer." *Baskin*, 401 F.3d at 791. The fact that a stop takes place in a "high crime area" is also among the "relevant contextual considerations in a *Terry* analysis." *Wardlow*, 528 U.S. at 124.

Here, the officers were patrolling a high crime area, and they were on alert due to some recent shootings. Two of the officers saw Moore look back at their squad car, then make a motion with his arm which they reasonably believed to be a "safety check" for a weapon. It makes no difference that Moore had his back to the officers and the officers could not actually see the weapon. A person trying to conceal a gun is not likely to make it visible to an approaching police officer. On the other hand, a police officer with experience observing how people act when concealing a weapon is entitled to draw upon that experience and make reasonable inferences therefrom. It also makes no difference that the officers did not know whether Moore had a permit for the weapon they suspected he was concealing. The fact that Moore made the "safety check" gesture only after seeing a police squad car

-6-

suggests a guilty conscience in that regard, and it also suggests, as Officer Boyack explained, that Moore could have been anticipating a gunfight with the approaching officers. Ultimately, Moore's behavior and mannerisms when seeing the officers' approaching squad car in an area of high crime was enough for the officers to reasonably suspect that Moore was either unlawfully carrying a weapon or planning to use a weapon unlawfully.

***

Moore's motion to suppress [ECF No. 12] is **DENIED**. The Court will contact the parties to schedule a trial date.

Dated at Milwaukee, Wisconsin, this 24th day of January, 2013.

**BY THE COURT:**

*/s/ Rudolph T. Randa*

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**